(No. 26964.—

CHICAGO PARK DISTRICT, Appellant, *vs.* FRANK CANFIELD, Appellee.

*Opinion filed January 21, 1943—Rehearing denied March 15, 1943.*

JOHN O. REES, (PHILIP A. LOZOWICK, of counsel,) for appellant.

WILLIAM T. PRIDMORE, (MARION G. McCLELLAND, of counsel,) for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

Appellee was prosecuted in the municipal court for a violation of an ordinance of the Chicago Park District. He was

found not guilty and discharged. The complaint charged a violation of section 62, chapter 12, of the code of the Chicago Park District, by operating a vehicle upon West Garfield boulevard, with a certain display advertisement painted thereon, in violation of the ordinance. The case was tried before the court on a stipulation of facts. The trial court held the ordinance invalid and entered judgment discharging the defendant. The appeal was perfected to this court by the Chicago Park District on the ground that the validity of a municipal ordinance is involved. This gives us jurisdiction on direct appeal, upon certificate of the trial judge, under section 75 of the Civil Practice Act.

Two questions are presented by the record. First, whether the Park District had the power to adopt and enforce the ordinance and, second, whether the ordinance is invalid because it excepts from its operation common carriers and taxicabs. The ordinance involved is similar to the ordinance considered by this court in *Chicago Park District* v. *Canfield*, 370 Ill. 447.

The violation of the ordinance charged in that case was that the defendant operated a vehicle, with certain advertisements printed thereon, on a boulevard within the confines of Burnham Park. In that case we held that the Park District had the power to exclude such use of the boulevards, within the confines of the park, as mitigates against the full realization of the purposes of the park, for public use, and that a regulation reasonably prohibiting vehicular advertising comes within that field. It was further said, however, that such advertising, to be lawfully prohibited, must have in it, or the fact of its existence, some element which contravenes the public purpose for which parks are created and maintained; that in order for the Park District to exercise the power to prohibit vehicular advertising, it must appear that such advertising has a tendency to obstruct or interfere with traffic, by diverting the attention of drivers, or otherwise slow up and congest traffic; to

increase traffic hazards, or otherwise impair the health, safety and comfort of the public; that it could not be sustained purely on aesthetic grounds. It was further held that if such an ordinance could be sustained on the ground that it promoted or protected the public health, safety and comfort, it was no objection that the thing prohibited was also objectionable on aesthetic grounds.

In that case, while we sustained the power to adopt and enforce such an ordinance, we held the ordinance before us invalid for the reason that it was incomplete in that it did not definitely define what advertising was prohibited by the ordinance; that the determination of what advertisements would constitute a violation of the ordinance was left to the park officers, without any guide or rules, established by the ordinance, by which such determination should be reached.

In that case, as already observed, the violation of the ordinance was alleged to have occurred on a boulevard within the confines of a park. The decision was limited to the question of the power to enforce such an ordinance within the confines of a park under the jurisdiction of the Park District.

This case was tried on a stipulation of facts. From the stipulation it is apparent that counsel attempted to make a case which would raise the question of the power of the Park District to enforce such a regulation, outside the confines of a park district, but on a connecting boulevard, between the parks. The stipulation, however, does not go that far. While it is stipulated that the violation occurred on West Garfield boulevard, which, it is recited in the stipulation, is a link in the system of boulevards or parkways, interconnecting all the parks within the Chicago Park District, the facts contained in the stipulation do not warrant the conclusion that the boulevard was not within the confines of a park. There was set out at length in the stipulation the applicable provisions of the act creating the South

Park Commissioners. South Park Commissioners, a corporate body, was created by an act of the legislature in 1869. (Private Laws 1869, vol. 1, p. 360.) Section 4 of that act, by definite description, authorized South Park Commissioners to acquire for park purposes the identical lands now included within the confines of West Garfield boulevard. The stipulation further shows that these lands were acquired by purchase by South Park Commissioners. The title thereto was later vested in the Chicago Park District, as successor in title, by the act creating that district as it now exists. (Ill. Rev. Stat. 1941, chap. 105, pars. 333.1, *et seq.*) With these facts in the stipulation it shows that the violation of the ordinance in question occurred on lands acquired by the Chicago Park District, as successor of South Park Commissioners, for park purposes. This being true, West Garfield boulevard is a part of the lands acquired and used for park purposes, and is not merely a connecting boulevard between the parks within the district. It is a boulevard laid out and maintained on lands constituting a part of the Park District. It is stipulated that it is 200 feet wide. It consists of two 40-foot drives with a 15-foot walk on the outer side of each drive. Between the two drives is a 90-foot strip planted to trees, shrubs and flowers. This part is provided with seats and playgrounds and is used extensively for park purposes. Insofar, therefore, as the character of the boulevard, where the violation occurred, is concerned, this case is no different from the violation involved in *Chicago Park District* v. *Canfield, supra.* The decision in that case is decisive of the power and authority of the park board to pass and enforce the ordinance in question, unless such ordinance is invalid for other reasons.

Subsequent to the decision in that case, the ordinance was amended. Section 62, chapter 12, of the code of the Chicago Park District, which is the amended ordinance, provides that no person shall operate any vehicle, displaying

any placard, notice or advertisement in any park or on any public way within the park district. The section then contains five specific exceptions to which the ordinance does not apply. The first exception permits the operator of any such vehicle to enter any boulevard from an intersecting cross street for the purpose of reaching a building or premises in the block nearest the cross street. It also permits the operator of such vehicle to operate the same over the boulevard, for the purpose of leaving such building or premises, to the next intersecting cross street, where he is required to leave the boulevard. The second exception permits the owner of any vehicle to place his name thereon in lettering not more than two inches in height. The third excepts from the operation of the ordinance the name or names of the manufacturer of any such vehicle. The fourth exception provides that there may be displayed on any such vehicle the insignia or license data required by law. By the fifth exception it is provided that the ordinance shall not apply to common carriers and taxicabs. This brings us to the second question, *viz.:* does the exception of common carriers and taxicabs from the operation of the ordinance render it invalid? In determining this question we must keep in mind that a regulation of this kind can be sustained, only if it promotes and protects the public welfare and has a definite relation thereto. It must contain some element connected with the safety of traffic. It can be sustained only on the ground that it promotes the safety of public travel and the use of the park and park system. Such advertising can only be prohibited on the ground that it tends to distract the attention of drivers, or others, in such manner and to the extent that it slows up or congests traffic or increases traffic hazards.

In the court below the case was tried on this theory. The right to enforce the regulation was asserted on these grounds. The Park District offered testimony tending to bring the ordinance within this classification. The testimony

offered was sufficient to sustain the ordinance under our decision in *Chicago Park District* v. *Canfield, supra.* Appellee is not in a position to contend that such advertisements do not directly affect traffic by the distraction of the attention of drivers and pedestrians. The only purpose of carrying such advertisements on vehicles is to attract the attention of others. It has no other purpose.

The Park District has been expressly authorized to enact traffic regulations in the parks and on the boulevards under its jurisdiction. This power is subject only to the limitation that such power must be exercised for the promotion of public health, safety, morals or general welfare, in accordance with the purposes for which the Park District is organized. If a regulation falls within this classification it is no objection to its validity that it may also promote .aesthetic purposes if its reasonableness may be sustained on other grounds. *Neef* v. *City of Springfield,* 380 Ill. 275.

It is apparent, however, that the ordinance here involved creates an unlawful classification, discriminatory in its nature, which renders the ordinance invalid. The fifth exception provides in substance that the regulation shall not apply to common carriers and taxicabs. There is no reasonable ground upon which this classification can be made. It bears no relation to the object and purposes of the ordinance. Its only effect is to permit two classes of vehicles, *viz.:* vehicles operated by common carriers and taxicabs, to carry any advertisements, placards and notices, regardless of their size or appearance, upon the boulevards and through the parks. If the purpose of the regulation is to prevent the display of distracting signs on vehicles and thus decrease traffic hazards, the exception of these classes of vehicles, from the regulation, completely destroys it. An advertisement, placard or notice on a bus or taxicab would be equally as distracting as on any other type of vehicle. It would be no less an arbitrary classification to

exempt from its operation all automobiles manufactured in a certain factory, or models of a certain year. Such an exception would bear as reasonable a relation to the object and purpose of the ordinance.

We have repeatedly held that only those classifications are valid which are based upon reasonable grounds of distinction with reference to the object of the legislation. (*Josma* v. *Western Steel Car and Foundry Co.* 249 Ill. 508; *Jones* v. *Chicago, Rock Island and Pacific Railway Co.* 231 id. 302; *Harding* v. *People,* 160 id. 459; *Ritchie* v. *People,* 155 id. 98.) We have also held that where an exception is invalid because it is based upon an arbitrary and unreasonable classification, this renders the entire act, or section, invalid. (*Sheldon* v. *Hoyne,* 261 Ill. 222; *People ex rel. Ross* v. *Kaul,* 302 id. 317; *Mathews* v. *People,* 202 id. 389; *Connolly* v. *Union Sewer Pipe Co.* 184 U. S. 540, 46 L. ed. 679, 22 S. Ct. 431.

It follows that the municipal court was correct in holding the ordinance invalid. The judgment of the municipal court is therefore affirmed.

*Judgment affirmed.*

Mr. JUSTICE WILSON, dissenting.